Filed 6/17/22  P. v. Bragg CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C093561 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE19920007209) |
| v. | |
| ANDRE MARCUS BRAGG, | |
| Defendant and Appellant. | |

In 1993, a jury convicted defendant Andre Marcus Bragg of second degree murder (count 1), attempted premeditated murder (count 2), shooting at an occupied vehicle (count 3—Pen. Code, § 246),[1] and permitting the discharge of a firearm from his vehicle (count 4).  The trial court sentenced Bragg to prison for 15 years to life on count 1 and a

---

[1]  Undesignated statutory references are to the Penal Code.

1

consecutive middle term of 7 years on count 2; execution of sentence on counts 3 and 4 was stayed pursuant to section 654.

In January 2019, Bragg filed a petition for resentencing pursuant to section 1170.95. After issuing an order to show cause and holding a hearing to determine whether to vacate Bragg's murder conviction, the trial court granted the petition, vacated the conviction, dismissed count 1, and resentenced him to credit for time served. The court ordered Bragg released from prison subject to a three-year period of parole.[2] The People, represented in this proceeding by the District Attorney of San Joaquin County, appealed. The People contend the court erred in granting the resentencing petition because Bragg was not convicted of murder under the natural and probable consequences doctrine, the court refused to analyze whether Bragg could be convicted of second degree murder under an implied malice theory, and he was guilty under this theory beyond a reasonable doubt. The People also contend the court erred in excluding certain statements Bragg made during his parole hearings. We conclude that, even without considering evidence from Bragg's parole hearings, the court erred in granting relief because the jury's original findings rendered him ineligible for relief under section 1170.95 as a matter of law. We reverse and remand for further proceedings reinstating the original judgment and sentence.

## I. BACKGROUND

A.    *Factual Background*

As the parties do, we take our summary of the relevant facts from this court's prior opinion in Bragg's direct appeal. (*People v. Bragg* (June 13, 1994, C015773) [nonpub. opn.].)

---

[2] The parties agree that the court was not permitted to impose a parole term longer than two years. Because we conclude the trial court had no authority to vacate Bragg's murder conviction at all, we do not address this issue.

Sometime after 11:00 p.m. on May 5, 1992, gun shots were fired at a car occupied by Rachelle Jones and her boyfriend, Alfonso, from another car as they were driving on a freeway in Stockton. One of the shots struck Jones, causing her car to leave the freeway and come to rest against a cyclone fence. Jones died from a gunshot wound to the chest.

Alfonso testified that Jones had picked him up outside M.M.'s apartment complex on the night of the shooting. As Alfonso waited for Jones at a parking stall at the rear of the complex, M.M. pointed to a car that was leaving a nearby alley. Alfonso recognized the car as belonging to defendant. After Jones arrived and picked up Alfonso, she drove down the same alley that defendant's car had driven through. At that time, defendant's car came back in the opposite direction and passed Jones' car. Shortly thereafter, Alfonso saw defendant's car at a stop sign.

Defendant's car followed Jones' car onto the freeway. Jones told Alfonso that someone from defendant's car "had something hanging out the window." Shots were fired from the car, and Jones was hit. When interviewed by police, Alfonso stated that he saw the driver of the car and "thought he was [defendant]." He described the driver as a "light-skinned Black male," a phrase which accurately describes defendant.

On the morning of May 6, 1992, defendant went to the police station and reported that he had heard from a relative that he and his car had been identified as being involved in the shooting. After waiving his *Miranda*[3] rights, defendant claimed his Oldsmobile Delta 88 was not involved because it had not been running for a few days. He claimed that he and his girlfriend had been driven to the Conway area where they spent the day. He claimed that after they returned home at around 9:30 p.m., he went to sleep. Defendant repeatedly claimed that he had not been in the Louis Park area, where M.M. resided, for months. When informed by the police that several witnesses had identified

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

him as the person who was driving in the Louis Park area on the night of the shooting, defendant stated, "They couldn't identify me, because my windows are tinted." When told to recall that his driver's window was down, defendant responded with an affirmative nod. The police then asked defendant who was with him at the time of the shooting; he responded, "There's nothing I can say, I'll just have to do the time."

B.     *Statutory Background*

"Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015; Senate Bill 1437) eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule" by amending sections 188 and 189. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The amended section 188 provides that "[e]xcept as stated in subdivision (e) of Section 189 [regarding felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

"Senate Bill 1437 also added section 1170.95 to the Penal Code, which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 957, fn. omitted.) Under former section 1170.95, a petitioner was required to "file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second

4

degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' " (*Lewis, supra*, at pp. 959-960.)[4]

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, [former] subd. (d)(1).) 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (§ 1170.95, [former] subd. (d)(3).) At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (§ 1170.95, [former] subd. (d)(3).)" (*Lewis, supra*, 11 Cal.5th at p. 960.)[5]

---

[4] The statute has since been amended to specify it applies to petitioners who were convicted of attempted murder or manslaughter as well. (§ 1170.95, subd. (a); Stats. 2021, ch. 551, § 2.)

[5] Section 1170.95, subdivision (d)(3) now provides: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."

5

*C.     Procedural Background*

In January 2019, Bragg filed his petition for resentencing under section 1170.95.

The People filed an opposition to the petition arguing, in part, that Bragg could still be convicted of second degree murder because he acted with implied malice.

The trial court found that Bragg made a prima facie showing of entitlement to relief, and issued an order to show cause.

The parties submitted additional briefing.  The People argued the jury was not instructed on either felony murder or murder under the natural and probable consequences doctrine, and that Bragg's conviction was unaffected by Senate Bill 1437.

At the hearing to determine whether to vacate the murder conviction and recall Bragg's sentence, the court concluded, "I think that it's clear that Mr. Bragg was convicted on a natural and probable consequences theory under aiding and abetting.  I don't think that he would be convicted today given the changes to . . . [s]ection 188."  The prosecutor "ask[ed] the Court to articulate the facts upon which the Court ha[d] relied to find that Mr. Bragg, beyond a reasonable doubt, ha[d] not acted with implied malice or reasonable --."  The court responded, "It's based on the totality of the documents submitted by both the People and by Mr. Bragg."  The court granted the petition, vacated Bragg's murder conviction, dismissed count 1, and resentenced him to credit for time served.

## II.  DISCUSSION

*A.     Appealability*

Bragg argues we should dismiss the People's appeal because it is unauthorized by section 1238, and reversing his new sentence and subjecting him to a second evidentiary hearing would violate the constitutional prohibitions against double jeopardy.

As this court recently explained in *People v. Hampton* (2022) 74 Cal.App.5th 1092, 1102, "the trial court's order finding defendant entitled to relief under section 1170.95 is appealable under section 1238, subdivision (a)(5)."  We will therefore focus

6

on Bragg's assertion that the People's appeal should be disallowed because it would violate principles of double jeopardy.

"The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15 of the California Constitution guarantee that a person may not be placed twice 'in jeopardy' for the 'same offense.' " (*People v. Seel* (2004) 34 Cal.4th 535, 541-542.)

"At its core, the double jeopardy clause 'protect[s] an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' . . . [¶] 'The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal,' because the 'public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation." ' [Citation.] Consequently, the People cannot appeal from a jury's verdict acquitting a defendant, seeking a reversal in order to retry the defendant." (*People v. Eroshevich* (2014) 60 Cal.4th 583, 588-589.) "On the other hand, if a trial court rules that evidence was insufficient to support a conviction *after the jury has returned a verdict* the People may appeal that ruling 'because reversal would result in reinstatement of the jury verdict of guilt, not a new trial.' [Citations.] '[W]here a Government appeal presents no threat of successive prosecutions, the double jeopardy clause is not offended.' " (*Id.* at p. 590.)

"An evidentiary hearing under section 1170.95 . . . does not implicate double jeopardy because section 1170.95 'involves a resentencing procedure, not a new prosecution.' [Citation.] The retroactive relief provided by section 1170.95 is a legislative 'act of lenity' intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment that could implicate the Double Jeopardy Clause." (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 111; see also *People v. Myles* (2021) 69 Cal.App.5th 688, 704 ["double jeopardy principles are not at stake because defendant is

7

voluntarily seeking to vacate her prior conviction, not subjecting herself to a new trial or the possibility of increased punishment"].)  Additionally, we will not be ordering a new evidentiary hearing.  Rather, as we will explain, the trial court erred in granting Bragg's section 1170.95 petition because he was ineligible for relief as a matter of law.  This is an issue we may address on appeal.

B.     *The Jury's Instructions on the Natural and Probable Consequences Doctrine*

The People argue defendant was not convicted of murder under the natural and probable consequences doctrine or any other now invalid theory of murder because the jury was instructed only on direct aiding and abetting.  The People's argument turns on the fact the instruction on the natural and probable consequences doctrine mistakenly informed the jury that it had to find Bragg aided and abetted murder, which would have nullified any use of the doctrine with respect to murder.  Bragg does not address this particular error.

"Our law recognizes two forms of liability for aiders and abettors.  [Citation.] First, under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 843, superseded by statute on other grounds.)  Bragg's jury was correctly instructed on direct aider and abettor liability.

"Second, under the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)." (*People v. Gentile, supra*, 10 Cal.5th at p. 843.)

CALJIC No. 3.02 was "the pattern jury instruction concerning aider and abettor liability under the natural and probable consequences doctrine." (*People v. Covarrubias*

(2016) 1 Cal.5th 838, 899) Bragg's jury was instructed with a version of this instruction that failed to accurately utilize the model:

"One who aids and abets another in the commission of a crime or crimes is not only guilty of those crimes, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted.

"In order to find the defendant guilty of the crime of murder and attempted murder as charged in Counts One and Two of the information, you must be satisfied beyond a reasonable doubt that:

"One, the crime or crimes of *murder and attempted murder* were committed;

"Two, the defendant aided and abetted such crimes;

"Three, that a co-principal in such crime committed the crimes of *shooting at an occupied motor vehicle and driver permitting discharge of the firearm from the vehicle*;

"Four, the crimes of murder and attempted murder were a natural and probable consequence of the commission of the crimes shooting at an occupied vehicle and the driver permitting discharge of firearm from the vehicle." (Italics added.)

The instruction given was incorrect because the above emphasized portions were transposed. As a result, the instruction explained the general concept of the natural and probable consequences doctrine correctly but then told the jury that it needed to specifically find Bragg aided and abetted murder to find him guilty of that offense. Such a finding would mean that the verdict was not actually based on the natural and probable consequences doctrine but on direct aiding and abetting principles. Section 1170.95 provides no authority to vacate such a conviction.

We agree with Bragg that the prosecutor's argument, while it never used the phrase "natural and probable consequence," was consistent with applying the doctrine with shooting at an occupied vehicle as the target offense and murder as the non-target offense. The prosecutor referenced the existence of jury instructions, but did not review them and did not address the instruction's statement that the jury must find Bragg aided

9

and abetted murder to convict him of that offense.  Rather, the prosecutor argued generally, "even if the driver didn't intend to facilitate a murder in this case, certainly the evidence all points at that being the case.  Even if he only intended he was going to shoot at the car, not hurt the people in it, when those people died, he was [as] guilty of murder as the person who pulled the trigger.  [¶]  Once you set a chain of events in motion, once you start a crime, then you're responsible for what the person you're helping does.  And that's it.  You'll get instructions on that, that is basically it."

Where an attorney's arguments conflict with the instructions, we presume the jury followed the instructions.  (*People v. Boyette* (2002) 29 Cal.4th 381, 436.)  Indeed, the jury was instructed to do so.  Nonetheless, we conclude the inconsistency in the instructions coupled with the prosecutor's arguments created enough uncertainty that we cannot, at this point in our discussion, eliminate any possibility that the jury convicted Bragg of murder under the natural and probable consequences doctrine without also making additional findings that effectively nullified any use of the doctrine.  Therefore, we turn to the findings we are certain the jury made and address their impact on Bragg's eligibility for resentencing.

C.      *Implied Malice Murder*

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).)  Malice may be express or implied.  (§ 188, subd. (a).)  " 'It is implied . . . "when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' " (*People v. Taylor* (2004) 32 Cal.4th 863, 867.)  The jury was accurately instructed on these principles and found Bragg guilty of second degree murder.

"[N]otwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the

10

person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*People v. Gentile, supra*, 10 Cal.5th at p. 850.) At his section 1170.95 hearing, defense counsel argued the fact the jurors found the murder was not first degree precluded a determination that the jury would have found Bragg guilty of murder without using the natural and probable consequences doctrine. Defense counsel argued implied malice had been presented to the jury, but it is no different from the natural and probable consequences doctrine, and both had been eliminated by Senate Bill 1437. The court stated that if the jury had found Bragg had implied malice it would have convicted him of first degree murder. The prosecutor argued the jury reached this conclusion because it found no premeditation and deliberation, and not because it concluded Bragg lacked implied malice. The People assert the court rejected implied malice as a valid legal theory by conflating it with the natural and probable consequences doctrine. At a minimum, the record does not disclose that the court ever adequately explained why implied malice did not apply. The court seemed to be focused solely on whether this theory was argued to the jury. Regardless, it erred in applying the concept of implied malice to this case.

Section 246 prohibits the malicious and willful discharge of a firearm at an occupied motor vehicle. (*People v. Rivera* (2019) 7 Cal.5th 306, 333.) Bragg's conviction for this offense thus establishes, at a minimum, that the jury found beyond a reasonable doubt that he was a direct aider and abettor of that crime who knew of the shooter's unlawful purpose and intended to commit or facilitate the shooting at the occupied vehicle. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 [" 'A "person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime" ' "].) Importantly, " 'section 1170.95, subdivision (c) cannot reasonably be read to permit a "do-over" of

11

factual issues that were necessarily resolved against a section 1170.95 petitioner by a jury.' " (*People v. Price* (2021) 71 Cal.App.5th 1128, 1149.)

In *People v. Chun* (2009) 45 Cal.4th 1172 (*Chun*), our Supreme Court addressed the impact of similar findings by a jury. *Chun* held that a violation of section 246 "merge[s] with the charged homicide and cannot be the basis for a second degree felony-murder instruction." (*Id*. at p. 1178.) The court then explained that the fact the trial court had instructed the jury on second degree felony-murder was not prejudicial: "any juror who relied on the felony-murder rule necessarily found that defendant willfully shot at an occupied vehicle. The undisputed evidence showed that the vehicle shot at was occupied by not one but three persons. The three were hit by multiple gunshots fired at close range from three different firearms. No juror could have found that defendant participated in this shooting, either as a shooter or as an aider and abettor, without also finding that defendant committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life—which is a valid theory of malice. In other words, on this evidence, no juror could find felony murder without also finding conscious-disregard-for-life malice. The error in instructing the jury on felony murder was, by itself, harmless beyond a reasonable doubt." (*Id.* at p. 1205.)

Bragg concedes the record establishes he drove his armed passenger near the car driven by the victims, but argues the jury could have been unconvinced he intended his passenger to shoot at the occupants rather than at the car itself,[6] and could have been

_____

[6] The trial court excluded transcripts from two of Bragg's parole hearings in which he explained the shooter told him to pull alongside the other car because he was going to shoot them. The court excluded the evidence on the basis that the district attorney questioned Bragg at the most recent hearing. The court's discussion indicated it was unaware Bragg had said the same thing at the earlier hearing that was not attended by the deputy district attorney. It does not appear the People drew this distinction to the court's attention. The court indicated it would have deemed statements made in response to questions from a parole board commissioner reliable and admissible. (See also *People v.*

12

unconvinced he knew and disregarded that the shooting would endanger the lives of the victims. Bragg argues *Chun* is distinguishable because here the facts were that only one firearm was used, only one shot hit a victim, and the vehicles were driving on the freeway. Whether a jury's conviction for shooting at an occupied vehicle will always preclude relief under section 1170.95 is a question that is not before us. But we cannot conclude *Chun* left any room to conclude the jury necessarily found anything less than implied malice in this case. The natural and probable consequences doctrine and implied malice are different because only the latter requires the defendant to share the mental state of the actual perpetrator of implied malice murder. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1058, abrogated on other grounds by *People v. Lewis, supra*, 11 Cal.5th 952.) But, here, it would be impossible to find Bragg guilty under the natural and probable consequences doctrine and not find implied malice if the jury found, as it did, that Bragg aided and abetted shooting at an occupied vehicle. Hence, defense counsel at the hearing on Bragg's petition stated that the natural and probable consequences doctrine and implied malice "are exactly the same thing. I think that's exactly what was presented to the original jury." His statement was accurate as to this case.

Based on the jury's findings, we must conclude it necessarily found Bragg guilty of murder under a theory that is still valid. As such, the trial court was not permitted to relitigate the issue and reach a different conclusion. (*People v. Price, supra*, 71 Cal.App.5th at p. 1149.) Bragg was ineligible for relief under section 1170.95 and the

---

*Anderson* (2022) 78 Cal.App.5th 81, 84 [concluding trial court did not err in considering testimony from parole suitable hearings in section 1170.95 evidentiary hearing]; *People v. Myles, supra*, 69 Cal.App.5th at p. 692 [concluding parole hearing transcript is admissible in section 1170.95 resentencing hearing].) Nonetheless, the People bore the burden of proof beyond a reasonable doubt and the trial court expressed skepticism that Bragg could have taken responsibility for his actions at his parole hearing without extrapolating at all on the facts. As such, we have not considered this evidence because we are not engaging in any factfinding.

court erred as a matter of law in concluding the prosecution failed to meet its burden of proof.

## III.  DISPOSITION

We reverse the trial court's order granting Bragg's petition, vacating his murder conviction, and dismissing count 1, and we remand for further proceedings reinstating the original judgment and sentence.

/S/

_____

RENNER, J.

We concur:

/S/

_____

ROBIE, Acting P. J.

/S/

_____

DUARTE, J.

14